No. 97,677

STATE OF KANSAS, *Appellee*, v. LARRY GERVEASE BEE, JR., *Appellant*.

(207 P.3d 244)

Opinion filed May 22, 2009.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellant.

*Hillary B. Haas*, county attorney, argued the cause, and *John R. Bullard*, former county attorney, and *Steve Six*, attorney general, were with her on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: Larry Gervease Bee, Jr., seeks review of a published opinion by the Kansas Court of Appeals affirming the sentence imposed following the revocation of his probation without consideration of nonprison sanctions.

On July 14, 2003, the State filed a complaint/information charging Bee with one count of possession of methamphetamine in violation of K.S.A. 65-4160(a), one count of violating drug tax stamp requirements in violation of K.S.A. 79-5204, one count of possessing marijuana in violation of K.S.A. 65-4162(a)(3), one count of possession of drug paraphernalia in violation of K.S.A. 65-4152, and one count of driving with an open container in violation of K.S.A. 8-1599. On January 26, 2004, Bee entered into a plea agreement, pursuant to which he pled guilty to one count of possession of methamphetamine and the State dismissed the four other counts. On May 10, 2004, the district court found Bee subject to the terms of Senate Bill 123 (K.S.A. 2003 Supp. 21-4729) and suspended the imposition of the standard sentencing guidelines prison

sentence of 13 months and placed Bee on intensive supervised probation and required as a condition mandatory drug treatment. He fell in the presumptive probation section of the drug offense sentencing guidelines grid block 4-H.

On June 14, 2004, the State filed a motion to revoke Bee's probation, alleging his failure to report to his intensive supervision officer (ISO), failure to enter inpatient treatment, and continued marijuana and methamphetamine use. On September 13, 2006, the State filed an amended motion to revoke Bee's probation, alleging violation of the conditions of his probation. At the revocation hearing, Bee's ISO testified that Bee never entered a drug treatment program, that he repeatedly failed to report to the ISO director, that he failed to pay any court costs and other costs, that he failed to report for a scheduled in-patient drug treatment, and that he tested positive for marijuana and amphetamines. On September 18, 2006, the district court revoked his probation and ordered him to serve the underlying sentence. The district court did not consider on the record alternative nonprison sanctions, such as the Labette Correctional Conservation Camp (Labette). Bee filed a timely notice of appeal.

The Court of Appeals affirmed the revocation and sentence in *State v. Bee*, 39 Kan. App. 2d 139, 179 P.3d 466 (2008). This court granted Bee's petition for review on the question of whether, when an offender is sentenced pursuant to K.S.A. 2003 Supp. 21-4729, K.S.A. 2003 Supp. 21-4603d(g) requires the district court to consider Labette or a community intermediate sanction center prior to revoking probation and ordering the underlying prison sentence to be served.

This appeal seeks resolution of an apparent conflict between two statutory provisions relating to imposition of nonprison sanctions. One provision requires consideration of a conservation camp or a community intermediate sanction center before revoking probation. The other provision mandates imposition of an underlying prison sentence upon a finding of failure to comply with a court-ordered drug abuse treatment program.

Interpretation of a sentencing statute is a matter of law, and the standard of review is unlimited. *Abasolo v. State*, 284 Kan. 299, Syl. ¶ 1, 160 P.3d 471 (2007).

K.S.A. 2003 Supp. 21-4603d(g) requires in relevant part:

"[P]rior to revocation of a nonprison sanction of a defendant whose offense is classified in grid blocks 4-E or 4-F of the sentencing guideline grid for drug crimes and whose offense does not meet the requirements of K.S.A. 2003 Supp. 21-4729, and amendments thereto, **or** prior to revocation of a nonprison sanction of a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid . . ., the court shall consider placement of the defendant in the Labette correctional conservation camp, conservation camps established by the secretary of corrections . . . or a community intermediate sanction center. Pursuant to this paragraph the defendant shall not be sentenced to imprisonment if space is available in a conservation camp or a community intermediate sanction center and the defendant meets all of the conservation camp's or a community intermediate sanction center's placement criteria unless the court states on the record the reasons for not placing the defendant in a conservation camp or a community intermediate sanction center." (Emphasis added.)

Our courts have construed the statutory language "shall consider placement" to be mandatory. See, e.g., State v. Wiegand, 275 Kan. 841, 846, 69 P.3d 627 (2003); State v. Williams, 34 Kan. App. 2d 837, 838, 125 P.3d 578 (2006).

In 2003, the Kansas Legislature enacted K.S.A. 2003 Supp. 21-4729 (often referred to as Senate Bill 123), providing for nonprison sanctions of certified drug abuse treatment programs for certain qualified offenders. Subsection (f) provides:

"(1) Offenders in drug abuse treatment programs shall be discharged from such program if the offender:

(A) Is convicted of a new felony, other than a felony conviction of K.S.A. 65-4160 or 65-4162, and amendments thereto; or

(B) has a pattern of intentional conduct that demonstrates the offender's refusal to comply with or participate in the treatment program, as established by judicial finding.

"(2) Offenders who are discharged from such program shall be subject to the revocation provisions of subsection (n) of K.S.A. 21-4603d, and amendments thereto."

K.S.A. 2003 Supp. 21-4603d(n) reads in relevant part:

"Except as provided by subsection (f) of K.S.A. 21-4705, and amendments thereto, in addition to any of the above, for felony violations of K.S.A. 65-4160 or 65-4162, and amendments thereto, the court shall require the defendant who meets the requirements established in K.S.A. 2003 Supp. 21-4729, and amendments thereto, to participate in a certified drug abuse treatment program, as provided in K.S.A. 2003 Supp. 75-52,144, and amendments thereto, including but

not limited to, an approved after-care plan. *If the defendant fails to participate in or has a pattern of intentional conduct that demonstrates the offender's refusal to comply with or participate in the treatment program, as established by judicial finding, the defendant shall be subject to revocation of probation and the defendant shall serve the underlying prison sentence* as established in K.S.A. 21-4705, and amendments thereto. For those offenders who are convicted on or after the effective date of this act, upon completion of the underlying prison sentence, the defendant shall not be subject to a period of postrelease supervision." (Emphasis added.)

K.S.A. 2003 Supp. 22-3716(f) provides:

"Offenders who have been sentenced pursuant to K.S.A. 2003 Supp. 21-4729, and amendments thereto, and who subsequently violate a condition of the drug and alcohol abuse treatment program shall be subject to an additional nonprison sanction for any such subsequent violation. Such nonprison sanctions shall include, but not be limited to, up to 60 days in a county jail, fines, community service, intensified treatment, house arrest and electronic monitor."

In determining whether a conflict among these statutory sections exists and how to resolve any such conflicts, it is helpful to consider certain fundamental principles of statutory interpretation.

The principal rule governing interpretation of statutes is that the legislature's intent governs if this court can ascertain that intent. The court presumes that the legislature expressed its intent through the language of the statutory scheme. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1040-41, 190 P.3d 245 (2008). When the statutory language is plain and unambiguous, the courts therefore do not need to resort to statutory construction. *In re Adoption of G.L.V.*, 286 Kan. at 1041.

As a general rule, this court strictly construes a criminal statute in favor of the accused, which simply means that the court reads words with their ordinary meaning. The court decides any reasonable doubt about a word's meaning in favor of the accused. *State v. Kleypas*, 282 Kan. 560, 564, 147 P.3d 1058 (2006). This rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible so as to give effect to the legislative design and intent. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008).

In order to ascertain the legislative intent underlying particular statutory provisions, this court must give effect, if possible, to the

entire act. It is our duty, so far as practicable, to reconcile different provisions so as to make them consistent, harmonious, and sensible. *In re Adoption of G.L.V.*, 286 Kan. at 1041. When a conflict exists between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of that subject, the specific statute controls, unless it appears that the legislature intended to make the general act controlling. *State v. Williams*, 250 Kan. 730, Syl. ¶ 3, 829 P.2d 892 (1992).

This court presumes that the legislature acted with full knowledge and information about the statutory subject matter, prior and existing law, and the judicial decisions interpreting the prior and existing law and legislation. In the same vein, we also presume that when the legislature revises an existing law, it intends to change the law that existed prior to the amendment. *In re Adoption of G.L.V.*, 286 Kan. at 1041-42.

Keeping these principles in view, the apparent conflicts among the statutory sections are subject to resolution. Although the language is not transparent, a close reading of. the plain language of the various statutory provisions clarifies the requirements imposed on sentencing courts.

In the absence of other statutes, K.S.A. 2003 Supp. 21-4603d(g) would require the sentencing court to consider placement in Labette. K.S.A. 2003 Supp. 21-4729(f) states, however, that offenders *shall* be discharged from drug treatment programs if they exhibit a pattern of intentional conduct demonstrating refusal to comply with the programs and discharged offenders *shall* be subject to revocation under K.S.A. 2003 Supp. 21-4603d(n). K.S.A. 2003 Supp. 21-4603d(n) likewise states that a judicial finding of failure to comply with or participate in a treatment program *shall* subject the defendant to revocation of probation and the defendant *shall* serve the underlying prison sentence.

The statutory language "shall" generally represents a mandatory course of conduct. See, *e.g.*, *State v. Drayton*, 285 Kan. 689, Syl. ¶ 19, 175 P.3d 861 (2008); *State v. Robinson*, 281 Kan. 538, 543, 132 P.3d 934 (2006). But see *State v. Johnson*, 286 Kan. 824, 850, 190 P.3d 207 (2008) (context of statutory scheme and case law may render word "shall" directory and not mandatory). This court has

previously interpreted the word "shall" to be mandatory in the context of nonprison sanctions. See *Wiegand,* 275 Kan. at 846.

A judicial finding established that Bee had a pattern of intentional conduct demonstrating his refusal to comply with or participate in the treatment program. The district court was therefore required to discharge him from the drug treatment program, and K.S.A. 2003 Supp. 21-4729(f)(2) made Bee subject to K.S.A. 2003 Supp. 21-4603d(n). But even without a formal discharge, K.S.A. 2003 Supp. 21-4603d(n) required the district court to revoke Bee's probation and to order him to serve his underlying sentence.

Although the plain language of K.S.A. 2003 Supp. 21-4603d(n) and K.S.A. 2003 Supp. 21-4729(f) appear to be in conflict with the more general requirement of K.S.A. 2003 Supp. 21-4603d(g) relating to considering Labette, two principles of statutory construction resolve that conflict. First, the drug treatment sanction constitutes a more specific phase of the nonprison sentence scheme than the requirement that the court consider Labette in both drug and nondrug cases, and the more specific statute controls. See *Williams,* 250 Kan. 730. Second, the drug treatment sanction was enacted after the Labette sanction statute was enacted, and the court presumes that the legislature intended to change the law with respect to considering Labette. See *In re Adoption of G.L.V.,* 286 Kan. 1042.

Bee argues that K.S.A. 2003 Supp. 22-3716(f) is inconsistent with mandatory imposition of the underlying sentence. K.S.A. 2003 Supp. 22-3716(f) calls for additional nonprison sanctions for offenders who violate a condition of the drug treatment program. The plain language of this statutory provision does not, however, conflict with the plain language of K.S.A. 2003 Supp. 21-4603d(n) and K.S.A. 2003 Supp. 21-4729(f). K.S.A. 2003 Supp. 22-3716(f) provides for additional nonprison sanctions for violating a condition of the drug and alcohol program. This allows courts to address instances of failing to fulfill program requirements, which differs from the conduct sanctioned by K.S.A. 2003 Supp. 21-4603d(n) and K.S.A. 2003 Supp. 21-4729(f). The latter statutes address a refusal to comply with or participate in the drug treatment program and a pattern of intentional conduct.

The legislative scheme provides that an offender who may be resistant or makes mistakes while in a treatment program may continue in the program but may be subject to nonprison sanctions, such as jail time, fines, community service, intensified treatment, house arrest, or electronic monitoring as incentives to complete the program successfully. An offender sentenced pursuant to K.S.A. 21-4729 who, like Bee, totally fails to participate in the treatment program is subject to immediate imposition of the underlying prison sentence. The statute is clear that once the district court has made the requisite finding of intentional conduct of refusing to participate in drug treatment program, placement in the Labette is not a required consideration or, in most cases, a viable option for prompting successful completion of a drug treatment program and is not a substitute for imposition of the underlying prison sentence.

Bee argues that he was never discharged from the drug abuse treatment program and was therefore not subject to mandatory service of his sentence. K.S.A. 2003 Supp. 21-4603d(n) does not require discharge from a treatment program, however; it requires only a judicial finding that the defendant failed to participate in the treatment program or engaged in a pattern of intentional conduct demonstrating a refusal to comply with or participate in the program.

The State summarily dismisses the entire basis of Bee's appeal, contending that K.S.A. 2003 Supp. 21-4603d(g), which addresses consideration of Labette, specifically excludes those drug offenses governed by K.S.A. 2003 Supp. 21-4729. A close reading of the relevant part of K.S.A. 2003 Supp. 21-4603d(g) reveals, however, that the legislature distinguished between two different types of offenses. That statute requires consideration of Labette "prior to revocation of a nonprison sanction of a defendant . . . whose offense does not meet the requirements of K.S.A. 2003 Supp. 21-4729," *or* consideration of Labette "prior to revocation of a nonprison sanction of a defendant whose offense is classified in the presumptive nonprison grid block of either sentencing guideline grid."

Bee falls in the latter category: his offense was classified in the presumptive nonprison grid block of the drug sentencing guideline grid. The word "or" is generally to be read as a disjunctive rather than a conjunctive. See, *e.g.*, *State v. Thomas*, 273 Kan. 750, 753, 46 P.3d 543 (2002); *Davis v. Vermillion*, 173 Kan. 508, 510-11, 249 P.2d 625 (1952). The exclusion of K.S.A. 2003 Supp. 21-4729 offenders therefore does not apply to him. The State's argument is contrary to the plain language of the statute.

Finally, at oral argument, counsel for appellant expanded the issue by maintaining that the phrase "in addition to any of the above" contained in 21-4603d(n) resolves any conflict as to whether consideration of 21-4603d(g) is required. *State v. Preston*, 287 Kan. 181, 195 P.3d 240 (2008), a case argued on the same docket as this matter, involved the question of whether probationers sentenced under K.S.A. 21-4729 receive the same jail time credits for inpatient treatment as regular probationers. We stated that "[i]f the legislature had intended for S.B. 123 probationers to receive the same jail time credit treatment that regular probationers were then already receiving, there is no reason for the legislature to even mention jail time credit in K.S.A. 21-4603d(n)." 287 Kan. at 184. We went on to emphasize that the provisions of K.S.A. 21-4603d(n) specifically apply to offenders sentenced pursuant to 21-4729 who refuse to comply with or participate in their mandatory drug treatment program and that the provision addresses a specific violation by a subset of all probationers. 287 Kan. at 184. If the legislature had intended for the "in addition to any of the above" language to mandate the consideration of nonprison sanctions prior to imposing the underlying sentence, it certainly could have used language that specifically instructed the court to do so. Absent such clear direction, the plain language of the statute does not require further consideration of nonprison sanctions prior to revoking probation and imposing the underlying sentence.

Reading the plain language of the nonprison sanction scheme as a whole, together with rules relating to reading specific provisions ahead of general provisions, leads to the conclusion that the district court was not required to consider the Labette option. In fact, the statutory scheme precludes consideration of Labette when an of-

fender is sentenced pursuant to K.S.A. 21-4729 and the sentencing court determines that the offender has a pattern of intentional conduct that demonstrates a refusal to comply with or participate in a drug treatment program.

Affirmed.